# United States District Court

**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| BCR AVIATION, LLC,<br>Plaintiff, | §<br>§<br>§ | |
| v. | §<br>§ | CASE NO. 3:18-CV-2899-S |
| TEXAS GYRO, INC. et al.,<br>Defendants. | §<br>§<br>§ | |

## <u>MEMORANDUM OPINION AND ORDER</u>

This Order addresses Defendant Texas Gyro, Inc.'s ("Defendant") Motion to Dismiss (the "Motion") [ECF No. 7]. For the following reasons, the Court grants the Motion in part and denies the Motion in part.

## I.     BACKGROUND

Plaintiff BCR Aviation, LLC ("Plaintiff") is the owner of a 1982 Beechcraft King Air B200 aircraft. Compl. ¶ 7. In 2015, Pollard Aircraft Sales ("Pollard") contracted Defendant to install certain equipment, including a flight display system. *Id.* ¶ 8; Mot. 2. After Plaintiff purchased the aircraft in mid-2018 from Noetic Aviation, LLC ("Noetic"), which purchased it from Pollard, Plaintiff discovered certain problems with Defendant's work. Compl. ¶¶ 9-12. Specifically, Plaintiff alleges that Defendant (1) installed a flight display system that was incompatible with the autopilot, (2) incorrectly wired the Traffic Collision Avoidance System ("TCAS"), and (3) placed the altimeter equipment "on the right side of the panel away from the pilot, rendering it nearly unusable." *Id.* Plaintiff further alleges that Defendant represented in the aircraft's logbook that the work was "done in accordance with the [Manufacturer's Supplemental Type Certificate] and the applicable [Federal Aviation Administration] regulations." *Id.* ¶ 10 & Ex. 2. Plaintiff allegedly purchased the aircraft in reliance on Defendant's representations in the logbook. *Id.* ¶ 13.

As a result of the problems with the aircraft, Plaintiff allegedly was forced to "replac[e] the autopilot [and] repair . . . the TCAS and altimeter system." *Id.* ¶ 14. Plaintiff allegedly incurred repair costs as well as costs in diagnosing the malfunctions and transporting the aircraft for maintenance, loss of income, "diminution in value of the Aircraft, and inconvenience." *Id.* Plaintiff brings the present action alleging negligence and gross negligence in Count I, breach of express and implied warranties in Count II, breach of contract in Count III, negligent misrepresentation in Count IV, fraud in Count V, and violation of the Texas Deceptive Trade Practices Consumer Protection Act ("DTPA") in Count VI.

## II. LEGAL STANDARD

To defeat a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008). To meet this "facial plausibility" standard, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plausibility does not require probability, but a plaintiff must establish "more than a sheer possibility that a defendant has acted unlawfully." *Id.* The court must accept well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007). However, the court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007). A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the

2

assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citations omitted).

The ultimate question is whether the complaint states a valid claim when viewed in the light most favorable to the plaintiff. *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002). At the motion to dismiss stage, the court does not evaluate the plaintiff's likelihood of success. It only determines whether the plaintiff has stated a claim upon which relief can be granted. *Mann v. Adams Realty Co.*, 556 F.2d 288, 293 (5th Cir. 1977).

## III. ANALYSIS

### A. *Negligence and Gross Negligence*

The Court finds that the negligence and gross negligence claims are barred by the economic loss rule. "[T]here is not one economic loss rule broadly applicable throughout the field of torts, but rather several more limited rules that govern recovery of economic losses in selected areas of the law." *Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407, 415 (Tex. 2011) (quoting Vincent R. Johnson, *The Boundary-Line Function of the Economic Loss Rule*, 66 WASH. & LEE L. REV. 523, 534-35 (2009)). In the negligence context, the economic loss rule bars recovery of purely economic damages. *Clark v. PFPP Ltd. P'ship*, 455 S.W.3d 283, 287 (Tex. App.—Dallas 2015, no pet.) (citation omitted).

> In deciding whether the economic loss rule applies in [a] case, we examine the source of the defendant's duty and the nature of the claimed injury. To determine whether the claim sounds in tort or contract, the focus is on the substance of the cause of action and not simply the manner in which it was pleaded. "[A] party states a tort claim when the duty allegedly breached is independent of the contractual undertaking and the harm suffered is not merely the economic loss of a contractual benefit." "The nature of the injury most often determines which duty or duties are breached. When the injury is only the economic loss to the subject of a contract itself, the action sounds in contract alone."

*Id.* at 288-89 (second alteration in original) (citations omitted). The Court finds that Plaintiff's injury and Defendant's duty are both contractual in nature.

3

The only losses Plaintiff alleges are (1) the costs of replacing the autopilot and repairing the TCAS and altimeter systems, (2) the costs of transporting the aircraft to diagnose the malfunctions, (3) the loss of use of the aircraft, (4) loss of income, (5) diminution in value of the aircraft, and (6) inconvenience. Compl. ¶ 14. The Complaint states that Defendant "had a duty to exercise reasonable care as to the installation of the autopilot, TCAS, and altimeter equipment." [1] *Id.* ¶ 18. Thus, the aircraft's equipment and the resulting damages are the subject matter of the original contract. *See Clark*, 455 S.W.3d at 287, 289-90 (economic loss rule barred a claim for negligence in the sale of a vehicle where the harm was the loss of the vehicle); *Trans-Gulf Corp. v. Performance Aircraft Servs., Inc.*, 82 S.W.3d 691, 693-95 (Tex. App.—Eastland 2002, no pet.) (economic loss rule barred a claim for the cost of replacing a sealant on an aircraft's fuel tank). The loss of use of the aircraft and other alleged losses are "incidental costs associated with the replacement process," and so are also contractual in nature. *See Trans-Gulf*, 82 S.W.3d at 693.

The Court further finds that the purported losses arise out of the alleged breach of Defendant's contractual duty, rather than from an independent legal duty. *See Chapman Custom Homes, Inc. v. Dall. Plumbing Co.*, 445 S.W.3d 716, 718 (Tex. 2014). Plaintiff had to replace the autopilot because Defendant was contracted to install a flight display system that was incompatible with the autopilot. Compl. ¶¶ 10, 14. Plaintiff performed repairs on the TCAS and altimeter equipment because Defendant wired the TCAS incorrectly and placed the altimeter equipment in an incorrect location. *Id.* ¶¶ 11-12, 14. Plaintiff's incidental losses are a result of these alleged malfunctions. *Id.* ¶ 14. Outside the contractual relationship, nothing suggests that Defendant had a duty to service the aircraft. *See Mohseni v. Hartman*, 363 S.W.3d 652, 656 (Tex. App.—Houston

---

[1] Plaintiff contends that this is a typo and that the sentence should have stated that Defendant "had a duty to exercise reasonable care as to the installation of the [flight display system]." Resp. 4 n.1. It is axiomatic that Plaintiff cannot amend the complaint by a brief in opposition to a motion to dismiss. *Energy Coal v. Citgo Petroleum Corp.*, 836 F.3d 457, 462 n.4 (5th Cir. 2016) (citing *Roebuck v. Dothan Sec., Inc.*, 515 F. App'x 275, 280 (5th Cir. 2013)).

[1st Dist.] 2011, no pet.) ("Generally, no duty exists to take action to prevent harm to others absent certain special relationships or circumstances."). Accordingly, the Court finds that the alleged duty breached is contractual in nature.

For these reasons, the Court finds that the economic loss rule bars Plaintiff's claims of negligence and gross negligence.

## B. *Breach of Warranty*

The Complaint avers that Defendant breached "implied and express warranties." Compl. ¶ 24. First, the Court finds that Plaintiff did not plead sufficient facts to state a claim for breach of an express warranty. The elements of a breach of an express warranty claim are:

> (1) the defendant sold services to the plaintiff; (2) the defendant made a representation to the plaintiff about the characteristics of the services by affirmation of fact, by promise, or by description; (3) the representation became part of the basis of the bargain; (4) the defendant breached the warranty; (5) the plaintiff notified the defendant of the breach; and (6) the plaintiff suffered injury.

*Paragon Gen. Contractors, Inc. v. Larco Const., Inc.*, 227 S.W.3d 876, 886 (Tex. App.—Dallas 2007, no pet.). Privity is not required where defendant furnishes samples to a middleman or makes a transferable express warranty knowing the samples or warranty will likely be submitted to the ultimate buyer. *See Crosbyton Seed Co. v. Mechura Farms*, 875 S.2.2d 353, 361 (Tex. App.— Corpus Christi 1994, no writ); *Indust-Ri-Chem Lab., Inc. v. Par-Pak Co.*, 602 S.W.2d 282, 287 (Tex. App.—Dallas 1980, no pet.). Here, the Complaint does not allege that Defendant sold Plaintiff any services. The Complaint also does not allege that Defendant supplied any samples or express warranties to Noetic, the seller of the aircraft, *in order to induce* Defendant to make the purchase. Rather, the Complaint shows no more than that Defendant contracted with Pollard to perform the services and made express warranties to Pollard. *See* Compl. ¶ 8; Mot. 2. Accordingly, the Court finds that Plaintiff did not sufficiently plead facts to establish a breach of an express warranty claim. *Cf. Perkins v. Hicks*, No. 02-17-00227-CV, 2018 WL 3968489, at *6

(Tex. App.—Fort Worth Aug. 16, 2018, no pet.) (granting summary judgment where the plaintiff did not show that the defendant sold her any services).

Second, the Court finds that Plaintiff did not sufficiently plead a claim for breach of an implied warranty. "The elements of a cause of action for breach of the implied warranty of merchantability are as follows: 1) the defendant sold or leased a product to the plaintiff; 2) the product was unmerchantable; 3) the plaintiff notified the defendant of the breach; and 4) the plaintiff suffered injury." *Equistar Chems., L.P. v. Dresser-Rand Co.*, 240 S.W.3d 864, 867 (Tex. 2007) (quoting *Polaris Indus., Inc. v. McDonald*, 119 S.W.3d 331, 336 (Tex. App.—Tyler 2003, no pet.)). For implied warranties, privity is not required where: (1) the plaintiff seeks to recover for personal injuries as a result of a breach of the implied warranty under the UCC, provided there is horizontal privity; or (2) the UCC governs the transactions, the "seller is a merchant with respect to goods of that kind," and "the consumer uses the goods for an ordinary purpose." *Garcia v. Tex. Instruments, Inc.*, 610 S.W.2d 456, 457, 463-65 (Tex. 1980); *Nobility Homes of Tex., Inc. v. Shivers*, 557 S.W.2d 77, 80-83 (Tex. 1977) (quoting Tex. Bus. & Com. Code Ann § 2.314); *Crosbyton*, 875 S.W.2d at 361.

Viewing the Complaint in the light most favorable to Plaintiff, the Court finds that Plaintiff alleged that Defendant performed a hybrid contract involving the sale of goods and services. Such contracts are governed by the UCC. *See, e.g.*, *G-W-L, Inc. v. Robichaux*, 643 S.W.2d 392, 394 (Tex. 1982). The Court further finds that Plaintiff alleged that it is a consumer that attempted to use the aircraft for its ordinary purpose, but did not allege any personal injuries. *See* Compl. ¶¶ 10-14, 22-25. Nonetheless, Plaintiff pleaded no facts showing that Defendant is a merchant of any aircraft part, much less a merchant of the dual Garmin G600 Integrated Flight Display Systems at issue here. *See* Compl. ¶ 8. Accordingly, the Court cannot conclude that Defendant "is a merchant

with respect to goods of [the] kind" at issue in this case. *Nobility Homes*, 557 S.W.2d at 82

(quoting Tex. Bus. & Com. Code Ann § 2.314(a)). Thus, the Court finds that Plaintiff did not

sufficiently plead a cause of action for breach of the implied warranty under the UCC.

For these reasons, the Court dismisses the breach of express and implied warranty claims.

### C. *Breach of Contract*

"In Texas, '[t]he essential elements of a breach of contract action are: (1) the existence of

a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the

contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach.'"

*Smith Int'l., Inc. v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007) (alteration in original)

(quoting *Valero Mktg. & Supply Co. v. Kalama Int'l, L.L.C.*, 51 S.W.3d 345, 351 (Tex. App.—

Houston [1st Dist.] 2001, no pet.)). "[A] third party may recover on a contract made between other

parties only if the" third party is a third-party beneficiary—i.e., "if the parties intended to secure

some benefit to that third party, and only if the contracting parties entered into the contract directly

for the third party's benefit." *First Bank v. Brumitt*, 519 S.W.3d 95, 102 n.14 (Tex. 2017) (quoting

*Basic Capital Mgmt., Inc. v. Dynex Commercial, Inc.*, 348 S.W.3d 894, 897-99 (Tex. 2011)). Here,

Plaintiff does not allege any facts showing that Defendant and Pollard intended to benefit Plaintiff.

Plaintiff alleges no more than that it "is an intended third party beneficiary of [Defendant's]

contractual obligations," which is a conclusory allegation the Court does not need to credit. *See*

*Ferrer*, 484 F.3d at 780; Compl. ¶ 30. Accordingly, the Court finds that Plaintiff did not

sufficiently allege that it is a third-party beneficiary and thus dismisses the breach of contract

claim.

### D. *Negligent Misrepresentation*

The elements of a cause of action for negligent misrepresentation are: (1) the
representation is made by a defendant in the course of his business or in a
transaction in which he has a pecuniary interest; (2) the defendant supplies "false

7

information" for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation.

*Trans-Gulf Corp.*, 82 S.W.3d at 696 (citation omitted). Under Texas law, the class of individuals who may assert a cause of action for negligent misrepresentation is limited, and liability is limited, to loss suffered:

(a) by the person or one of a limited group of persons for whose benefit and guidance [Defendant] intends to supply the information or knows that the recipient intends to supply it; and (b) through reliance upon it in a transaction that [Defendant] intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

*Id.* (quoting RESTATEMENT (SECOND) OF TORTS § 552(2) (Am. Law Inst. 1977)). In this case, Plaintiff alleges that it relied on Defendant's representations in the aircraft's logbook. Compl. ¶ 13. Although Plaintiff alleges that Defendant made the representations in the course of its business and for the guidance of others, Plaintiff pleaded no facts showing that "[Plaintiff] was a party known by [Defendant] at the time the repair work was performed or that [Defendant] knew the information would be subsequently supplied to [Plaintiff]." *Trans-Gulf*, 82 S.W.3d at 696. While Plaintiff may argue that Defendant "should have assumed that a subsequent owner of the aircraft might rely on [Defendant's] repair records," Texas courts "require[] actual knowledge of the recipient's identity and a specific intent on the part of the alleged tortfeasor that the claimant would rely on the misrepresentation." *Id.* at 696. Accordingly, the Court finds that Plaintiff did not plead sufficient facts to state a claim for negligent misrepresentation.

### E. *Fraud*

"The elements of fraud are a material misrepresentation, which was false, and which was either known to be false when made or was asserted without knowledge of its truth, which was intended to be acted upon, which was relied upon, and which caused injury." *Sears, Roebuck &*

*Co. v. Meadows*, 877 S.W.2d 281, 282 (Tex. 1994) (emphasis omitted) (quoting *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 688 (Tex. 1990)). Plaintiff can state a claim for fraud even in the absence of direct misrepresentations if Defendant made a false representation with a view of reaching and influencing Plaintiff. *Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 578 (Tex. 2001) (citation omitted). The Court finds that Plaintiff did not state a claim for fraud for the same reason it did not state a claim for negligent misrepresentation. Plaintiff alleged no facts showing that Defendant intended to influence Plaintiff, and the Court does not credit the formulaic allegation that Defendant "intended for Plaintiff and all others . . . to rely . . . and act upon [its] misrepresentations." *Twombly*, 550 U.S. at 555; Compl. ¶¶ 38, 40.

### F.    *DTPA*

"The DTPA grants consumers a cause of action for false, misleading, or deceptive acts or practices." *Armstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 649 (Tex. 1996) (citation omitted). A consumer under the DTPA is "an individual . . . who seeks or acquires by purchase or lease, any goods or services." TEX. BUS. & COM. CODE ANN. § 17.45(4). "Privity of contract with a defendant is not required," but Plaintiff "must . . . establish that [Defendant] violated a specific provision of the Act, and that the violation was a producing cause of [Plaintiff's] injury." *Armstadt*, 919 S.W.2d at 649 (citation omitted). Additionally, Defendant's deceptive conduct must have occurred in connection with a consumer transaction. *Id.* "Where there is no contractual privity between the defendant seller and the consumer, 'the connection can be demonstrated by a representation that reaches the consumer or by a benefit from the second transaction to the initial seller.'" *Todd v. Perry Homes*, 156 S.W.3d 919, 922 (Tex. App.—Dallas 2005, no pet.) (quoting *Marshall v. Kusch*, 84 S.W.3d 781, 786 (Tex. App.—Dallas 2002, pet denied)). Defendant argues that Plaintiff did not establish causation and cannot state a DTPA claim because Defendant was not involved in Plaintiff's purchase of the aircraft. Mot. 10-11.

First, the Court finds that Plaintiff adequately pleaded causation.[2] The Texas Supreme Court defined a "producing cause" with respect to DTPA actions as "a substantial factor in bringing about an injury, and without which the injury would not have occurred." *Ford Motor Co. v. Ledesma*, 242 S.W.3d 32, 46 (Tex. 2007). This definition "is easily understood and conveys the essential components of producing cause that (1) the cause must be a substantial cause of the event in issue and (2) it must be a but-for cause, namely one without which the event would not have occurred. *Id.* Here, Plaintiff alleged that it "purchased the Aircraft in reliance on [Defendant's] representations," "would not have . . . purchase[d] the Aircraft" had it known that the representations were false, and was forced to "replac[e] the autopilot" and "repair . . . the TCAS and altimeter system." Compl. ¶¶ 13-14, 47-50. At the motion to dismiss stage, these allegations are sufficient to establish causation.

The Court further finds that Defendant was involved in the aircraft transaction within the meaning of the DTPA. Plaintiff alleged that Defendant's misrepresentations in the logbook reached Plaintiff when it was purchasing the aircraft, which is sufficient to establish that the alleged deceptive conduct occurred in connection with a consumer transaction. Compl. ¶¶ 44-51; *see also Young v. Pulte Homes of Tex., L.P.*, No. 02-14-00224-CV, 2016 WL 4491517, at *7 (Tex. App.— Fort Worth Aug. 26, 2016) ('The connection could be demonstrated by showing that . . . [Defendant] made a misrepresentation . . . [to a third party] that was communicated to [Plaintiff]."); *Todd*, 156 S.W.3d at 922 (same). Accordingly, Plaintiff pleaded sufficient facts to state a DTPA claim.

---

[2] Defendant does not explain why it contends that Plaintiff did not plead causation.

## IV. CONCLUSION

For the reasons discussed above, the Court grants the Motion in part and denies the Motion in part. The Court grants the Motion as to the claims for negligence, gross negligence, breach of express and implied warranties, breach of contract, negligent misrepresentation, and fraud. The Court denies the Motion as to the DTPA claim. Plaintiff has not sought leave to amend. If Plaintiff wishes to amend the dismissed claims, it must seek leave to file an amended complaint by July 11, 2019. If a motion for leave to file, with the proposed amended complaint attached, is not filed by this date, these claims will be dismissed with prejudice.

**SO ORDERED.**

SIGNED June 11, 2019.

**KAREN GREN SCHOLER**
**UNITED STATES DISTRICT JUDGE**